(Reap. Dec. 9588)

MOSCAHLADES BROS., INC. *v.* UNITED STATES

Entry No. 754694.

(Decided February 8, 1960)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

DONLON, Judge: Plaintiff has appealed for reappraisement of certain foodstuffs that were imported from Greece. These are described in the invoices (which are of record, as part of the official papers introduced by plaintiff) as 100 barrels of peppers in brine, 100 barrels of vine leaves in brine, 100 cases of okra with tomato sauce in tins, and 150 cases of okra "natural" in tins, shipped from Piraeus to New York.

In substance, it is plaintiff's contention that it purchased these foodstuffs from food merchants at inland Greek factories, using Moscahlades Bros. of Piraeus, Greece, as its agent without fee, or as an accommodation seller or consignor; that these inland factories were the principal market, respectively, for the several foods there purchased; that the freely offered prices in the principal market to all purchasers for export to the United States were in Greek drachmas, but such prices are to be arrived at not by proof of what the prices were, but by working back from the dollar prices shown on the consular invoices; that if there were offerings of such or similar merchandise for domestic consumption, the prices were no higher than the prices for export; and that, if all these facts are so, the merchandise should be appraised at export values and that such values are f.o.b. the respective factories, to be computed by deducting from invoice dollar prices at which the goods were consigned by the Piraeus firm to plaintiff in New York, the cost of inland freight from the factories to Piraeus (the port) and certain other shipping expenses, all as shown on such invoices.

While plaintiff's statement of what it expected to prove is comprehensive, actual proofs are not equally so.

Plaintiff adduced the testimony of two witnesses. One was Theodore Moscahlades, treasurer of Moscahlades Bros., Inc., the plaintiff corporation and importer of the merchandise. The other witness was his brother, Photios Moscahlades, manager and director of Moscahlades Bros., a partnership of Piraeus, Greece, stated in the invoices to be the seller or consignor of the merchandise. Photios Moscahlades could not speak English. In order to adduce his testimony in the Greek language, plaintiff offered Theodore Moscahlades as interpreter. Counsel for defendant stated in open court that he had no objection to this unusual arrangement, by which an officer of plaintiff and one who himself was a witness, acted as interpreter for another witness. The court found it necessary to caution the interpreter more than once that his function was solely that of translation, and that his personal explanations and interpolations were improper. Notwithstanding such admonitions, the record is far from satisfactory, at least insofar as the translated testimony of Photios Moscahlades is concerned.

Plaintiff introduced into evidence an affidavit of Photios Moscahlades, consulated in Greece, without apprising the court that the affiant was personally present in court and would be offered as a witness. When this fact became known, the court ordered the affidavit expunged from the record. The Judicial Code, title 28, United States Code, section 2633, provides that, in reappraisement proceedings, the judge may admit in evidence affidavits of persons *whose attendance cannot*

*reasonably be had.* In view of the clear language of section 2633, it is far from clear why plaintiff offered this affidavit, or why defendant, except for "questions" as to the weight and materiality of the affidavit, stated to the court that it had no objection to the affidavit being received in evidence. It is not admissible. It is not a part of the record.

Appraisement was at the values at which plaintiff entered this merchandise. Having changed position, which is its privilege, plaintiff now seeks to establish that the entered values should be reduced by deducting from invoice unit prices the cost of inland freight and other shipping costs that were included in such unit prices, at which the merchandise was invoiced to plaintiff and paid for by it.

As is well known, the issue of when inland freight may be deducted from price for purposes of export value appraisement, has been extensively litigated. It is not necessary to recount here the many cases on that issue. Suffice it to say that now it is settled law that, where the freely offered price of merchandise for export is a unit price f.o.b. port, the cost of freight from inland factory to port which is included in the price is not deductible in determining export value. *United States* v. *Paul A. Straub & Co., Inc.,* 41 C.C.P.A. (Customs) 209, C.A.D. 553, and cases following the rule in the *Straub* case.

Plaintiff here has the burden of showing by competent proofs that the several items of merchandise of this appeal were not correctly valued in appraisement, and also what the correct values are.

Theodore Moscahlades testified that occasionally he goes to Greece to buy various Greek foods, such as black olives, olive oil, figs, oregano, and pickled vegetables. (R. 8.) He said that plaintiff, which he referred to as the American firm, buys from Moscahlades Bros., of Greece, black olives, olive oil, figs, and oregano, which he stated the Greek firm "specialize in" and which they sell to the American firm. He further stated that if Moscahlades Bros. of Greece did not carry an item wanted by the American firm, such as the pickled vegetables of this suit, the Greek firm would buy for account of plaintiff "without any commission, just as purely an accommodation." (R. 9.) This appears to be a limited offering to one buyer only. He did not know market prices for merchandise in Greece. He relied on the Greek firm for market information. (R. 10.)

Theodore Moscahlades further testified that the Greek firm shipped the merchandise of this suit "at an open price" pursuant to written orders, which he said were in plaintiff's New York office, but for some unexplained reason they were not produced. (R. 12.) Whatever price was stated in the invoice, was accepted by Moscahlades Bros., Inc., New York. (R. 12.) In this case, the prices were expressed as f.o.b. Piraeus.

Photios Moscahlades, in his translated testimony, said he was famil-

iar with the merchandise of this suit; that he had purchased it in the respective districts shown in the consular invoices. (R. 20.) He identified each of the districts as one of several principal markets for the specified items, peppers in brine and vine leaves in brine (R. 21, 23) and okra. (R. 26.) These three food items are sold for domestic consumption in Piraeus (R. 23), but at lower prices than sales for export "because the quality is lower and also the packaging is much inferior to the ones that they are exporting." (R. 24.) He further stated that the Greek firm does not "pack" the entry items, but purchases them as an accommodation for the American firm. (R. 19.)

The prices paid by the Greek firm in the Greek districts where the items were purchased was, he testified, the invoice prices, less expenses as shown in the consular invoices. The Greek firm made no commission or profit on the purchased items. (R. 20, 22, 25.) Photios Moscahlades also testified, however, that he bought the merchandise at Greek currency prices, drachmas, and that he converted such prices into dollars by "just dividing by thirty." (R. 25, 26.)

On cross-examination, he stated that he did not have with him the Greek sales invoices of purchase. (R. 30.) He first said that the three district firms shown on the consular invoices freely offered the entry items for sale for home consumption and export to the United States. (R. 30.) He subsequently stated, however, that the packer of the vine leaves in brine did not sell for export. (R. 32.) He could not remember the freely offered price or prices for home consumption or for export. (R. 31.) Domestic prices for merchandise such as or similar to the merchandise of this appeal would, he knew, be lower than the corresponding export price. (R. 32.) Merchandise like the entry items is not sold exclusively by the producers identified in the consular invoices. There are other Greek firms which offer similar merchandise. (R. 33.)

On redirect examination, Photios Moscahlades testified that *he did not know the prices at which the specified entry items were freely offered for sale to all purchasers for export to the United States* (R. 34), except as he could relate such offerings to the shipment of the merchandise in this appeal. (R. 38.) On recross-examination, Photios Moscahlades stated that he had never bought for Greek home consumption, and *he was not familiar with the* domestic or *export records* of the district firms from which he purchased the entry items. (R. 39, 40.)

Vine leaves in brine appear to be the only merchandise of the suit, as to which plaintiff perhaps has proven that the appraisement was erroneous. While there are said to be other Greek purveyors of all items of the merchandise, the packer of the vine leaves, at least, did not sell vine leaves for export. (R. 32.) This evidence, absent any competent evidence of other free offerings of such or similar mer-

chandise for export to the United States, would appear to impugn export value as the basis for appraisement of the vine leaves. The difficulty with plaintiff's position in that respect, however, is that it is export value which plaintiff is asserting as the proper basis of valuation of all the merchandise, including the vine leaves, and there is no claim or proofs as to another value basis.

No one has testified as to what the *freely offered prices* were for any of the suit merchandise in the principal Greek markets, for export to the United States. Such prices were in Greek currency. That much is clear. But plaintiff has adduced no evidence as to what these prices were, and price is the first statutory fact in establishing the amount of export value. It is worth noting here, although the provision is well known, what it is that Congress has provided as to the method of computing export value.

Tariff Act of 1930, as amended, section 402(d):

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

This statutory provision was closely analyzed in *American Commercial, Inc.* v. *United States*, 40 Cust. Ct. 690, 692, Reap. Dec. 9072, as follows:

Briefly stated, export value is the market value or price of the merchandise (under statutory circumstances, here conceded) "plus, when not included in such price," certain enumerated costs. There is no provision in section 402(d) for deduction of anything from price. That is to say, when *not* included in price, certain costs are to be added. When costs are included in price, there is no provision for subtracting them, or any of them, in order to arrive at export value computed under the statutory formula.

Price is price, except where market conditions are such as to depress price to a level where the seller is absorbing costs specified in the statute and where that is the price situation, such costs, to the extent that they are not included in price, are arbitrarily to be added. This provision helps to protect the revenues of the United States and the competitive markets of domestic manufacturers. It is a reasonable provision. But whether or not it is reasonable, it is the provision which Congress enacted. [Italics quoted.]

At the least, plaintiff's proofs ought to show the price or prices, at the time of exportation to the United States, at which such or similar merchandise was *freely offered for sale to all purchasers* in the principal markets, and in the usual wholesale quantities, for exportation to the United States. Plaintiff has shown no offerings save only those to its own Greek agent, an accommodation seller or con-

signor to it in respect of this merchandise. It claims that Greek prices were drachma prices for all offerings, including this merchandise, but it has not proved what these Greek offering prices were.

It is not enough for plaintiff to show, as evidence of Greek prices, the special practice of its agent to construct artificial invoice unit dollar prices by dividing by 30, in order to change drachmas into dollars, and adding certain costs to alleged Greek prices not shown of record.

It is probably not necessary to point out that there should be substantial evidence of facts from which the fact in issue can be reasonably inferred, and that declaration of an essential ultimate fact is not substantial evidence of it. *Brooks Paper Company* v. *United States,* 40 C.C.P.A. (Customs) 38, C.A.D. 495. There is here no competent proof of evidentiary facts to establish values different from the appraised values. Lacking such evidence, the appraised values are presumptively correct.

In view of the absence of proofs as to what offering prices were in the principal markets, it is not necessary to weigh evidence of record as to the close and special business relationship between the American and Greek firms, nor to decide whether sales by the Greek firm to the American firm were based upon the free offerings for which the statute calls.

I find, therefore, that the proofs offered are not competent to overcome the presumptively correct appraised values. I conclude that the values for the several classes of merchandise returned by the appraiser are the correct values. 28 U.S.C., section 2633.

Judgment will be entered accordingly.